# D. H. McGUIRE v. C. C. CHAMBERS, DOING BUSINESS AS C. C. CHAMBERS & COMPANY.[1]

January 14, 1921.

No. 21,972.

**Breach of warranty — measure of damages — charge to jury.**
1. The measure of damages for breach of warranty of quality of personal property sold is the difference between the actual value of the property and its value if as warranted. The contract price is immaterial, but where the contract price and the value as warranted are the same, it is harmless error to instruct that the measure of damages is the difference between the contract price and the fair market value.

**Evidence — identity of sample of corn.**
2. A sample of corn introduced in evidence held sufficiently identified.

**Verdict supported by evidence.**
3. The evidence is sufficient to sustain the finding of the jury as to the value of the corn delivered.

Action in the district court for Hennepin county to recover $888 for breach of warranty on sale of a carload of corn. The case was tried before Bardwell, J., who when plaintiff rested and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $765. From an order denying his motion for a new trial, defendant appealed. Affirmed.

[1] Reported in 180 N. W. 1013.

*Thomas V. Sullivan,* for appellant.

*John P. Devaney* and *Theodore W. Thomson,* for respondent.

HALLAM, J.

About the thirteenth or fourteenth of June, 1918, at Saint Paul, Minnesota, plaintiff purchased from defendant a car of corn containing 1,438 bushels, at $1.40 a bushel. The sale was made by sample. Plaintiff ordered the corn shipped to Stanton, Wisconsin. His evidence is that on its arrival there he found it inferior to the sample, and that he notified defendant that he would ship the corn back, but defendant asked him not to do so. He then brought this action to recover damages for breach of warranty. The jury awarded him $765. Defendant appeals.

1. The court instructed the jury that plaintiff's measure of damages was the difference between "the contract price" and "the fair market value of the corn that was delivered." This was wrong. This being an action for breach of warranty of quality, the measure of damages was the difference between the actual value of the corn and its value if as warranted. Merrick v. Wiltse, 37 Minn. 41, 33 N. W. 3; Skoog v. Mayer Bros. Co. 122 Minn. 209, 142 N. W. 193. The contract price is immaterial. This error was, however, without prejudice, since plaintiff's testimony was that corn equal to sample was worth $1.40, that is, that the contract price and the actual value were the same, and defendant's witnesses did not dispute this.

2. Plaintiff offered in evidence a sample of corn claimed to have been taken from the car actually delivered to him. This sample was received in evidence. There is some controversy as to the identity of this sample. We think, however, plaintiff's evidence of identity was sufficient to warrant the court in receiving it.

3. The most troublesome question is whether there is sufficient evidence to sustain a verdict for the amount found by the jury. The verdict amounts to 53 cents per bushel of corn delivered. The jury must, therefore, have found that the corn delivered did not exceed in value 87 cents per bushel.

The sale was made in Saint Paul. The case was tried in Minneapolis. It was stipulated that the market value of corn in June, 1918, was the

same in both Saint Paul and Minneapolis. The evidence was that on the Minneapolis chamber of commerce, corn is graded by numbers, from one to six, and that all outside of, or inferior to, number six, is called "sample grade." As described by one witness, sample grade "can. be anything, bin burnt, musty, sour, sprouted, rotten; may be just beyond the requirements of No. 6 grade, and be otherwise good corn * * * may be a big range. * * * It simply means it is outside of that grade and can be anything outside of that," and that "what one car of sample grade would sell for, that wouldn't be any criterion as to the value of another car of sample."

The only evidence of value of the corn delivered is as follows:

An assistant secretary of the chamber of commerce, who showed no familiarity with values, but knew only what his records contained, testified that his records show, on June 14, 1918, "part car sample grade mixed corn, reported sold at 86 cents."

Mr. Fitzgerald, a live stock dealer, who was at that time "buying and selling option corn," "not the actual corn," and who said that he was familiar with the markets and saw the market reports every day, testified that the value of the corn delivered was, on June 13 and 14, 1918, 80 cents a bushel. On further examination as to his knowledge of values and qualification to testify, the court rejected his further testimony.

Plaintiff testified that the value of the corn delivered was 80 cents a bushel at Stanton, Wisconsin, and one of defendant's witnesses testified on cross examination that the market value at Stanton was the Minneapolis market price "plus freight and the handling profit," that the cost of handling was 3 to 4 cents a bushel and the freight "probably 10½ or 12½ cents" a bushel.

Defendant's witnesses testified that any kiln dried corn, and the corn delivered was kiln dried corn, would have sold for $1.20 at that time.

Another car of sample corn was offered to plaintiff at the time he made the purchase, at $1.19 per bushel. He said this was inferior to the sample he had "showed the jury." Defendant argues that he meant by this that it was inferior to the corn delivered, a sample of which had

been shown to the jury, and that therefore the corn delivered must have been worth more than $1.19. But the sample of corn on which the sale was made had also been shown to the jury. So far as the record shows, the comparison may have intended to refer to that sample. Plaintiff's evidence as to value is not strong, but we think it is sufficient to sustain the verdict.

Order affirmed.